IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEONID P. KRIVOLENKOV,                                    Case No. 3:22-cv-00498-SB

                  Plaintiff,                          **OPINION AND ORDER**

        v.

LEVI S. YANDELL, JUAN M. ROLDAN,
AND DIMITRIY Y. LISICHENKO,

               Defendants.

_____

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Leonid P. Krivolenkov ("Krivolenkov"), a self-represented litigant, filed this action against several Multnomah County Sheriff's Office employees: Levi Yandell ("Yandell"), Juan Roldan ("Roldan"), and Dimitriy Lisichenko ("Lisichenko") (together, "Defendants"), alleging constitutional and state law claims arising from Defendants' enforcement of judicial orders imposing a COVID-19 mask mandate in the Multnomah County Courthouse and from Krivolenkov's attendant arrest.

Now before the Court is Defendants' motion for summary judgment. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1367, and all parties have consented to

PAGE 1 – OPINION AND ORDER

the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons discussed

below, the Court grants Defendants' motion for summary judgment.

## BACKGROUND[1]

On January 14, 2021, Krivolenkov entered the Multnomah County Courthouse (the

"Courthouse"). (Decl. Leonid Krivolenkov ("Krivolenkov Decl.") Supp. Pl.'s Resp. Mot.

Summ. J. ("Pl.'s Resp.") ¶ 6, ECF No. 42.) Security officers advised Krivolenkov that all

persons entering the Courthouse must wear a face covering. (Krivolenkov Dep. 39:5-6.[2])

Krivolenkov informed the officers that a medical condition prevented him from wearing a face

mask. (*Id.* 32:21-24.) Krivolenkov was referring to sinus problems, a nasal septum deviation, and

seasonal allergies. (*Id.* 22:8-9.) The officers handed Krivolenkov a piece of paper stating that

face masks were required for entry and including the phone number that he could call to receive

an exemption. (*Id.* 33:21-34:17.) Krivolenkov attempted to enter the Courthouse. (Interior Video

3:08-11.[3])

Defendants—employees of the Multnomah County Sheriff's Office on duty at the

Courthouse—arrived in the Courthouse lobby. (*Id.* 3:34-55; Decl. Levi Yandell Supp. Defs.'

Mot. ("Yandell Decl.") ¶¶ 1-3, ECF No. 40.) The officers told Krivolenkov that he must leave

and escorted him outside. (Interior Video 4:21-33; Krivolenkov Dep. 53:24-54:2.) In the

---

[1] Unless otherwise noted, the following facts are either undisputed or viewed in the light most favorable to Krivolenkov.

[2] Defendants attach excerpts of Krivolenkov's deposition testimony to their summary judgment motion. (*See* Dep. Leonid Krivolenkov, March 29, 2023 ("Krivolenkov Dep.") Supp. Defs.' Mot. Summ. J. ("Defs.' Mot.") Ex. A at 26-52, ECF No. 37.) The cited portions of his deposition are located therein.

[3] Krivolenkov submits video footage with his declaration. (*See* Krivolenkov Decl. ¶¶ 7-8.) The videos include: (1) Exhibit 42, a video of the exterior of the Courthouse ("Exterior Video"); and (2) Exhibit 43, a video of the interior of the Courthouse ("Interior Video"). Krivolenkov submitted the videos on a DVD.

courtyard, Krivolenkov stopped. (Exterior Video 0:57-3:35.) He took out his phone and began filming the officers. (Krivolenkov Dep. 55:9-11.) Defendant Yandell stated that Krivolenkov would be taken to jail if he refused to leave the Courthouse property. (*Id.* 54:9-14.) Krivolenkov did not leave, and the officers arrested him. (Exterior Video 0:57-4:00.) Defendant was held on charges of Trespass in the Second Degree, Disorderly Conduct in the Second Degree, and Obstruction of Governmental Administration, but ultimately was not charged with any criminal offenses. (Pl.'s Resp. Exs. 14-15.[4])

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (simplified).

## DISCUSSION

Krivolenkov alleges that Defendants violated (1) the Americans with Disabilities Act ("ADA") and 18 U.S.C. § 245; (2) his constitutional right against false arrest without probable cause under the Fourth Amendment; (3) his constitutional right against excessive force under the Fourth Amendment; and (4) his constitutional right against retaliatory arrest under the First

---

[4] Krivolenkov attaches various exhibits to his response. (*See* Pl.'s Resp. Exs. 1-17; 19-41 ("Pl.'s Resp. Exs."), ECF No. 41-1.)

Amendment. (Compl. at 9-12, ECF No. 21.) Krivolenkov also asserts state law claims of false

imprisonment, assault, battery, and abuse of process against Defendants. (*Id.* at 10.) Defendants

move for summary judgment on all claims. (Defs.' Mot. at 10-23.) The Court grants Defendants'

motion.

## I.      DISABILITY DISCRIMINATION

Krivolenkov claims that Defendants denied him entrance into the Courthouse "because of

his disability." (Compl. ¶ 5.) As such, Krivolenkov alleges disability discrimination under

Title II of the ADA and under 18 U.S.C. § 245 against all Defendants in their individual

capacity. (*Id.* ¶¶ 29-32.) Defendants request summary judgment in their favor because Title II of

the ADA does not provide a cause of action against public employees in their individual capacity

and 18 U.S.C. § 245 does not provide a private right of action. (Defs.' Mot. at 10-13.) The Court

agrees.

### A.      Title II of the ADA

Title II of the ADA is codified, as amended, at 42 U.S.C. § 12131 *et seq*. Title II provides

that "no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities, of a public

entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute

defines a "public entity" to include "any State or local government" or "any department, agency,

special purpose district, or other instrumentality of a State or States or local government."

42 U.S.C. § 12131(1). "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a

State official in her individual capacity to vindicate rights created by Title II of the ADA[.]"

*Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Krivolenkov asserts an ADA claim against Defendants in their individual capacities.

(Compl. ¶¶ 29-32.) He does not assert an ADA claim against Defendants in their official

capacities (*id.*), and none of the Defendants satisfy the statutory definition of a "public entity." *See* 42 U.S.C. § 12131(1). Accordingly, the Court grants summary judgment in Defendants' favor on Krivolenkov's Title II claim.

**B.    18 U.S.C. § 245**

Title 18 of the United States Code governs federal crimes and provides no basis for civil suits. *See Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir. 1956) ("Appellant first points to 18 U.S.C.[ §§] 241 and 242. As these are criminal statutes, however, they provide no basis for this civil suit."), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24, 29 (9th Cir. 1962); *see also Cooley v. Keisling*, 45 F. Supp. 2d 818, 820 (D. Or. 1999) ("18 U.S.C. § 245 is a criminal statute and does not grant the plaintiff a private right of action."). Accordingly, the Court enters summary judgement for Defendants on Krivolenkov's 18 U.S.C. § 245 claim.

**II.    FOURTH AMENDMENT: FALSE ARREST**

Krivolenkov alleges that Defendants violated his Fourth Amendment rights by arresting him without probable cause. (Compl. ¶ 58.) Defendants argue that they are entitled to summary judgment because Defendants had probable cause to arrest Krivolenkov. (Defs.' Mot. at 13-15.) The Court agrees.[5]

**A.    Applicable Law**

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)). Probable cause to arrest exists "when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an

---

[5] The Court does not reach Defendants' argument that they are entitled to qualified immunity because the Court enters summary judgment in Defendants' favor on the merits of each of Krivolenkov's constitutional claims. (*See* Defs.' Mot. at 18-19.)

offense has been or is being committed by the person being arrested." *Lopez*, 482 F.3d at 1072 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Alternatively stated, probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Lopez*, 482 F.3d at 1072 (simplified); *see also Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023) (so stating).

Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge. *See Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (noting that because the defendant officer had probable cause to arrest the plaintiff for one charge, the arrest was not unconstitutional even if the officer lacked probable cause for another charge); *see also Lacy v. Cnty. of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008) (collecting cases). Thus, "if there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (simplified); *see also Rodrigues v. Cnty. of Haw.*, No. 18-00027 ACK-RLP, 2018 WL 6070336, at *10 n.8 (D. Haw. Nov. 20, 2018) ("Because a claim for false arrest focuses on the validity of the arrest, not of each individual charge, the existence of probable cause for any of the charges made will cause a claim for false arrest to fail."). The existence of probable cause is a complete defense to a claim for wrongful arrest. *See Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986) (concluding that "[a] police officer has immunity if he arrests with probable cause"); *Cabrera v. Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1988) ("To prevail on his [Section] 1983 claim for false arrest . . . [the plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

///

"Generally, 'the existence of probable cause is a question for the jury,' though summary judgment is appropriate when there is no genuine issue of fact and if 'no reasonable jury could find an absence of probable cause under the facts.'" *Johnson v. Barr*, No. 21-16547, 2023 WL 5332314, at *6 (9th Cir. Aug. 18, 2023) (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994)).

### B.    Analysis

Defendants are entitled to summary judgment on Krivolenkov's false arrest claim because no reasonable jury could find an absence of probable cause to arrest him.

Under Oregon law, "[a] person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully . . . in or upon premises." OR. REV. STAT. ("O.R.S.") § 164.245(1). A person "enters or remains unlawfully" when that person "fail[s] to leave premises that are open to the public after being lawfully directed to do so by the person in charge." O.R.S. § 164.205(3).

Here, Krivolenkov entered the Courthouse—premises open to the public—without a face covering. (Krivolenkov Decl. ¶ 6.) An officer informed him that all persons entering the Courthouse were required to wear a face covering, absent an approved exemption, pursuant to judicial order. (Krivolenkov Dep. 32:21-24.) Krivolenkov nonetheless attempted to enter the Courthouse. (Interior Video 3:08-11.) Defendants informed Krivolenkov that he must leave. (Krivolenkov Dep. 53:24-54:2.) After being escorted outside to the Courthouse's courtyard, Krivolenkov stopped. (Exterior Video 0:57-3:35.) Defendants again informed him that he must leave. (Krivolenkov Dep. 54:9-14.) Krivolenkov did not leave and began filming with his cell phone. (*Id.* 55:9-11.) The Court finds that given the totality of these circumstances, Defendants had personal knowledge of information sufficient to lead a person of reasonable caution to

believe that there was a fair probability that Krivolenkov was committing the offense of trespass in the second degree. *See Lopez*, 482 F.3d at 1072 (describing the standard for probable cause).[6]

In response, Krivolenkov argues, first, that Defendants arrested him on a public sidewalk, and, accordingly, Defendants did not have lawful authority to direct him to leave. (Pl.'s Resp. at 8.) However, Krivolenkov points to no evidence indicating that he left Courthouse property. Instead, the video submitted by Krivolenkov reveals that Krivolenkov remained within the Courthouse's walled courtyard at the time of the arrest. (*See generally* Exterior Video.) Further, in his deposition, Krivolenkov acknowledged that he told Defendants that he "declined to leave" the Courthouse. (Krivolenkov Dep. 70:1-7.) Krivolenkov has not established a genuine issue of material fact with respect to his assertion that he had exited Courthouse property at the time of arrest.

Second, Krivolenkov argues that Defendants could not lawfully direct him to leave the Courthouse because he was engaged in the constitutionally protected activity of filming Defendants. (Pl.'s Resp. at 8.) In support, Krivolenkov relies on *State v. Dameron* for its holding that "[i]f a person has a state constitutional right to remain on premises, that right may be raised as a defense to a charge of criminal trespass." 316 Or. 448, 457 (1993), *overruled on other grounds by Stranahan v. Fred Meyer, Inc.*, 331 Or. 38 (2000).

In *Dameron*, the Oregon Supreme Court concluded that the defendant had a right to peaceably seek petition signatures in a large, privately-owned shopping center open to the public for commercial purposes and that the state had failed to prove that the defendant was "lawfully

---

[6] The Court notes that the "beyond a reasonable doubt" standard Krivolenkov cites (Pl.'s Resp. at 6) would be the applicable standard for the state to obtain a conviction if the state had pursued criminal charges against him, but it is not the relevant standard for an arrest. *See, e.g.*, *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("[P]robable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt.").

directed" to leave or that he had "remained unlawfully" on the premises for the purpose of criminal trespass in the second degree. 316 Or at 462. In *Stranahan*, the Oregon Supreme Court overruled portions of *Dameron*, concluding that the Oregon Constitution does not confer a right to solicit signatures on certain private property over the owner's objection. 331 Or. at 66.

Krivolenkov had no unfettered constitutional right to remain on Courthouse property to film police officers after being told to leave. Article I, section 8, of the Oregon Constitution does not bar an arrest for trespass accompanying expression or speech. *See State v. Babson*, 355 Or. 383, 387 (2014) (rejecting a facial challenge to the defendants' convictions for second-degree criminal trespass for conducting an overnight vigil on the steps of the state capitol). Enforcement of laws that do not explicitly restrict speech may violate the Oregon Constitution only if the laws, as applied, "impermissibly burden protected expression." *City of Eugene v. Miller*, 318 Or. 480, 490 (1994); *see also State v. Robertson*, 293 Or. 402, 417 (1982) (laying out the framework for analysis under Article I, section 8, and explaining that laws that do not reference expression may be challenged as applied). For example, in *Miller*, the Oregon Supreme Court concluded that the relevant law had been unconstitutionally applied to burden protected expression because it treated the sale of expressive materials "more restrictively" than it treated the sale of other materials without "any rational basis" or "reasonabl[e] justif[ication]." 318 Or. at 491-92.

Here, Krivolenkov's arrest for criminal trespass did not impermissibly burden his protected expression. Even viewing the facts in the light most favorable to Krivolenkov, the record before the Court demonstrates that Defendants had a rational basis and reasonable justification to arrest Krivolenkov and that Defendants did not arrest Krivolenkov because he was filming. Indeed, no one told Krivolenkov to stop filming. (Krivolenkov Dep. 55:12-14.) Instead, Defendants had already asked Krivolenkov to leave the Courthouse premises and he

refused to do so before he began using his phone to record. (*Id.* 53:24-54:2.) In light of these facts, the Court concludes that no reasonable jury could find that Defendants lacked probable cause to arrest Krivolenkov for second-degree trespass, and therefore the Court grants summary judgment in Defendants' favor on the false arrest claim.[7] *See Dickerson v. City of Portland*, No. 3:19-cv-01126-SB, 2020 WL 7391267, at *3 (D. Or. Dec. 16, 2020) (granting summary judgment on the plaintiff's false arrest claim because probable cause existed for his arrest), *aff'd*, No. 20-36121, 2022 WL 824588 (9th Cir. Mar. 18, 2022).

## III.    FOURTH AMENDMENT: EXCESSIVE FORCE

Krivolenkov alleges in his complaint that Defendants violated his Fourth Amendment right against excessive force at several points in time: (1) while inside the Courthouse, Defendants "push[ed] him in[] the back" and "grabb[ed] his arm and shov[ed] him towards the exit" (Compl. ¶ 6); (2) when arresting him, Defendants "grab[bed his] arms and fingers twisting them, causing injury to wrist, hand, and nerve damage" and "bruising to his rib cage and scrapes on the leg" (*id.* ¶ 17; Pl.'s Resp. Exs. 19-40); and (3) after his arrest, Defendant Lisichenko "continued to inflict physical injury/pain to [Krivolenkov] by holding his arm with 'excessive and objectively unreasonable' force." (Compl. ¶ 21.) Defendants argue that the Court should enter summary judgment on Krivolenkov's excessive force claim because the force that Defendants used was reasonable under the circumstances. (Defs.' Mot. at 15-17.) The Court agrees.

///

---

[7] Because the Court concludes that Defendants had probable cause to arrest Krivolenkov for second-degree trespass, the Court does not address whether Defendants had probable cause to arrest him for the other offenses. *See Barry*, 902 F.2d at 773 n.5 (noting that because the defendant officer had probable cause to arrest the plaintiff for one charge, the arrest was constitutional even if the officer lacked probable cause for another charge).

A.     **Applicable Law**

It is a "fundamental premise that the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "There is . . . no mechanical test for determining whether a particular application of force was unreasonable; the reasonableness of a seizure must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officer or officers." *Chew*, 27 F.3d at 1440 (citing *Graham*, 490 U.S. at 396); *see also Bey v. Malec*, No. 18-cv-02626-SI, 2020 WL 2041940, at *4 (N.D. Cal. Apr. 28, 2020) ("The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable considering the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the '20/20 vision of hindsight.'" (quoting *Graham*, 490 U.S. at 396)).

"In assessing the objective reasonableness of a particular use of force, we consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) (quoting *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011)). Importantly, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (simplified). Indeed, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*

Summary judgment is appropriate if the court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915-16 (9th Cir. 1994) (affirming entry of summary judgment for the defendant officers where the district court concluded that the officer's use of force was "at all times . . . reasonable and proper").

**B.    Analysis**

Resolving all factual disputes in favor of Krivolenkov, the Court concludes that Defendants' use of force here was objectively reasonable under the circumstances.

"In weighing the governmental interests involved the following should be taken into account: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew*, 27 F.3d at 1440 (citing *Graham*, 490 U.S. at 396). "These factors, however, are not exclusive." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). "Rather, we examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan,* 630 F.3d at 826 (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

Here, the governmental interest in the use of force was minimal. Krivolenkov's suspected crimes were not particularly severe. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (denying qualified immunity based on a violent arrest of a "relatively calm trespass suspect"). Additionally, Defendants have not argued that Krivolenkov posed an immediate threat to the safety of the officers or others or that Krivolenkov actively resisted arrest or attempted to

evade arrest by flight.[8] (Defs.' Mot at 17.) However, even though the governmental interest in the use of force was minimal, the amount of force Defendants used was also minimal.

Specifically, viewing the facts in the light most favorable to Krivolenkov, Defendants pushed him in the back, grabbed his arms, and twisted his fingers. (Compl. ¶¶ 6, 17, 21.) Krivolenkov submitted evidence of scratches and bruises (but has not submitted any evidence of nerve damage). (*See* Pl.'s Resp. Exs. 19-40.) Krivolenkov denied medical attention following his arrest, and he did not subsequently seek medical treatment for any of his injuries. (Decl. Andrew Weiner Supp. Defs.' Mot. Ex. 5 at 2, ECF No. 38; Krivolenkov Dep. 92:12-24.)

On this record, the Court finds that the intrusion here "was less significant than most claims of force." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) ("The police did not threaten or use deadly force and did not deliver physical blows or cuts. Rather, the force consisted only of physical pressure administered on [the plaintiff's] limbs in increasing degrees, resulting in pain."). Given the minimal amount of force Defendants used, and considering the fact that Krivolenkov did not seek out medical attention after the arrest, the Court finds that Defendants' use of force was objectively reasonable. Accordingly, the Court enters summary judgment for Defendants on Krivolenkov's excessive force claim. *See Bratcher v. Polk Cnty.*, No. 3:20-cv-02056-SB, 2022 WL 17184419, at *9 (D. Or. Sept. 1, 2022) (granting summary judgment for defendants when the plaintiff suffered scratches when escorted to the patrol car and did not require subsequent medical attention), *findings and recommendation adopted*, No. 3:20-cv-2056-SB, 2022 WL 17178266 (D. Or. Nov. 23, 2022); *see also Hous.-Hines v. Hous. Indep. Sch. Dist.*, No. Civ.A. H-04-3539, 2006 WL 870459, at *5 (S.D. Tex. Apr. 5, 2006) (finding that

---

[8] However, there is some evidence in the record that Krivolenkov "briefly struggled" when Defendants arrested him, but Defendants "were able to gain control after just a few moments." (Yandell Decl. ¶ 12; *see also* Exterior Video 3:36-4:00.)

the plaintiff had not raised a genuine issue of material fact to support excessive force claim where the alleged injuries suffered during an arrest were "scratches and bruises[,]" explaining that "it is undisputed that [the plaintiff never] sought any treatment for such injuries" and the plaintiff received only "*de minimis* injuries during the incident").

## IV.    FIRST AMENDMENT

Krivolenkov alleges that Defendants violated his First Amendment right against retaliatory arrest by arresting him while he was recording them with his cell phone. (Compl. ¶ 51.) Defendants argue that the Court should enter summary judgment in their favor because Defendants did not arrest Krivolenkov because he was filming but instead because he refused to leave the Courthouse premises. (Defs.' Mot. at 17-18.) The Court grants summary judgment for Defendants on Krivolenkov's First Amendment claim.

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (simplified). "To prevail . . . , a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Id.* (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves*, 139 S. Ct. at 1726. There is a "narrow" exception "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727. "[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

Krivolenkov has not established a genuine issue of material fact with respect to his assertion that retaliatory animus was the cause of his arrest. He has not introduced any evidence

that he was arrested when otherwise similarly situated individuals were not arrested. As explained above, no reasonable jury could conclude that Defendants lacked probable cause for Krivolenkov's arrest. Accordingly, the Court grants summary judgment for Defendants on Krivolenkov's First Amendment claim. *See Hill*, 70 F.4th at 518 ("[T]he Court in *Nieves* held that the existence of probable cause defeats a retaliatory arrest claim."); *Baker v. Clearwater Cnty.*, No. 22-35011, 2023 WL 3862511, at *2 (9th Cir. June 7, 2023) (affirming grant of summary judgment on the plaintiff's retaliatory arrest claim because the deputy had probable cause for the arrest and the plaintiff failed to point to objective evidence sufficient to trigger the narrow exception).

## V.    STATE LAW CLAIMS

Krivolenkov alleges state law claims for false imprisonment, assault, battery, and abuse of process. (Compl. ¶¶ 33-40.) The Court grants Defendants' motion for summary judgment on all state law claims.[9]

### A.    False Imprisonment

For the reasons discussed above, Krivolenkov has failed to present a genuine dispute of material fact with respect to whether his arrest was unlawful, and therefore the Court grants summary judgment on his false imprisonment claim. *See Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 775 (2023) (explaining that the existence of probable cause renders an arrest lawful as a matter of law for the purpose of a false imprisonment claim); *Laizure v. Wash. Cnty. by &*

---

[9] Defendants are correct (*see* Defs.' Mot. at 19-20) that to the extent Krivolenkov seeks damages less than or equal to the damages permitted under the Oregon Tort Claims Act, the appropriate defendant with respect to Krivolenkov's state claims is Multnomah County, not Defendants. *See Harpole v. Boston*, No. 2:22-cv-01033-HZ, 2023 WL 5806250, at *4 (D. Or. Sept. 4, 2023) ("Under the Oregon Tort Claims Act, unless a plaintiff alleges damages greater than that specified in Oregon Revised Statute §§ 30.271, 30.272, or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment . . . is an action against the public body.") (simplified).

*through Wash. Cnty. Sheriff's Off.*, No. 3:17-cv-01254-SB, 2021 WL 4073275, at *2 (D. Or. Sept. 7, 2021) (granting summary judgment for the defendants on the plaintiff's false imprisonment claim because of the presence of probable cause for arrest).

**B.    Assault and Battery**

"In Oregon, 'assault' is defined as the intentional attempt to engage in harmful or offensive contact." *Trustus LLC v. Catlin Ins. Servs., Inc.*, No. 1:20-cv-00082-CL, 2020 WL 6994247, at *3 (D. Or. Nov. 3, 2020) (citing *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 48 (1956)), *findings and recommendation adopted*, 2021 WL 932015 (D. Or. Mar. 10, 2021). "'Battery' is the intent to cause harmful or offensive contact with the person of another." *Trustus LLC*, 2020 WL 6994247, at *3 (citing *Cook*, 207 Or. at 48). "Both assault and battery require the intent not only to do an act, but the intent to do violence and personal injury to the person assaulted." *Trustus LLC*, 2020 WL 6994247, at *3 (simplified).

The Court enters summary judgment for Defendants on Krivolenkov's assault and battery claims because Krivolenkov has not presented any facts to support a conclusion that Defendants intended to inflict harmful or offensive contact when they arrested him. *See Evans v. Multnomah Cnty.*, No. 3:07-cv-01532-BR, 2013 WL 1700940, at *7 (D. Or. Apr. 17, 2013) (granting summary judgment on the plaintiff's battery claim where "none of Plaintiff's arguments point to an evidentiary record from which rational jurors could have found [that the sergeant] intended to cause personal injury to Plaintiff").

**C.    Abuse of Process**

"Abuse of process is the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause." *Singh v. McLaughlin*, 255 Or. App. 340, 355 (2013) (simplified). "Thus, to prevail on an abuse of process

claim, a plaintiff must prove some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Id.*

Krivolenkov has not presented any evidence that Defendants had an ulterior purpose for threatening to take Krivolenkov to jail or for Krivolenkov's ultimate arrest. As a result, Defendants are entitled to summary judgment on Krivolenkov's abuse of process claim. *See Rubin v. Oregon*, No. 3:19-cv-01377-IM, 2022 WL 2713904, at *8 (D. Or. July 13, 2022) (granting summary judgment on the plaintiff's abuse of process claim because the plaintiff produced "no non-speculative evidence that Defendants were motivated in any way to silence" the plaintiff).

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment (ECF No. 37).

**IT IS SO ORDERED.**

DATED this 21st day of September, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge